UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Crim. No. 3:25-cr-00010-GFVT-MAS-1 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| BLAKE E. ROSSI, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the United States' Second and Third Motions for Revocation of Release. [R. 77; R. 79.]  These motions provide details of numerous violations of Ms. Rossi's terms of supervision prior, all of which occurred prior to her rearraignment.  Upon stipulation of the violations by Ms. Rossi, the Motions **[R. 77; R. 79]** are **GRANTED**.

**I**

On January 10, 2025, U.S. Magistrate Judge Matthew A. Stinnett signed a criminal complaint, after a quantity of methamphetamine had been found in Ms. Rossi's vehicle during a December 2024 traffic stop, and she was taken into custody. [R. 1.]  Ms. Rossi had her initial appearance on the complaint before Judge Stinnett on January 15, 2025. [R. 5.]  Ms. Rossi again appeared before Judge Stinnett for a detention hearing on January 29, 2025, having waived her right to a preliminary hearing, at which the United States withdrew its oral motion for detention. [R. 7.] Detention was therefore denied and Ms. Rossi was released on conditions. [*Id*.]

Ms. Rossi remained on pretrial supervised release until counsel for Ms. Rossi learned that, on August 7, 2025, she was indicted by a federal grand jury and charged with one count of

conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [R. 31.]  Ms. Rossi's initial appearance and arraignment on the indictment was held on August 13, 2025. [R. 37.]   On August 14, 2025, at a motion hearing, the United States withdrew their motion to detain Ms. Rossi, but the conditions of her pretrial supervised release were modified. [R. 39.]  As relevant here, Rossi's conditions of release were modified, as follows:

> The defendant's conditions of release shall be modified to include home detention.  The defendant is restricted to her residence at all times except for employment; education; religious services; medical, substance use disorder, or mental health treatment; attorney visits; court appearance; court-ordered obligations; or other essential activities approved in advance by the pretrial services office or supervising officer.

[R. 39.]  On the following day, August 15, 2025, Ms. Rossi was assigned a GPS monitor which she was thereafter required to wear, and signed a Probation 61B Form, a GPS Participant Agreement, setting forth the conditions of monitoring. [R. 47-1.]  Among these requirements, Ms. Rossi must obtain advance approval for any "essential leave." [*Id*.]

On November 12, 2025, Ms. Rossi appeared before Judge Stinnett regarding her first bond violation.  Following the hearing, Judge Stinnett found that a violation had occurred, but permitted Ms. Rossi to remain on pretrial release pursuant to the existing conditions. [R. 62.] Judge Stinnett firmly advised Ms. Rossi, however, that she must follow all conditions of her supervised release. [Id.]  On January 21, 2026, the Court continued Ms. Rossi's rearraignment to permit her to attend a state court proceeding scheduled to take place several weeks thereafter. [R.

71.]  Ms. Rossi's rearraignment was rescheduled to February 18, 2026, and she was again advised by the undersigned to adhere to all conditions of her supervised release.[1] [R. 72.]

On February 13, 2026, the United States filed the Second Motion for Revocation of Release, which proffered evidence of a number of supervised release violations.  The motion provides as follows:

> On February 3, 2026, during a routine review of the defendant's GPS points which map her present and previous locations, her supervising officer discovered that the defendant had traveled to an unauthorized location between 6:41 to 6:47 a.m.  On February 4, 2026, the defendant was confronted with the authorized trip and admitted to the travel. *Id*.  The supervising officer conducted a further review of the GPS points and discovered twelve additional unauthorized trips. *Id*.  All thirteen of the unauthorized trips took place after the defendant was specifically advised by the Magistrate Judge, in no uncertain terms, that she was to follow all the conditions of her release.  Four of the unauthorized trips occurred after the defendant was specifically advised by the District Court Judge that she was to follow all the conditions of her release.  Her violations blatantly violate the orally and written Court orders.

[R. 77 at 2-3.]

Several days later, on February 18, 2026, the United States filed the Third Motion for Revocation of Release, and provided evidence of another, distinct violation of the terms of supervised release.  The Third Motion provides as follows:

> On February 17, 2026, officers with the U.S. Probation Office advised the United States that evidence surfaced indicating that the defendant violated her conditions of release by traveling to Louisville, Kentucky, and participating in an "Honor Among Thieves" podcast.  The podcast was posted to You Tube in which the defendant was characterized and interviewed as a cartel "Queen-pin".  In reviewing the video and the GPS coordinates, U.S. Probation believes the podcast interview occurred on January 19, 2026, near Fern Valley Road in Louisville.  During the podcast, the defendant shows her electronic monitor on camera.  The defendant received permission from her supervising officer to travel to Louisville on that day, but for the purpose of picking up her brother from the airport to help

---

[1] Ms. Rossi's rearraignment was again continued to February 19, 2026, to avoid a scheduling conflict with Ms. Rossi's previously scheduled state court proceeding.

3

her put her belongings in storage prior to her scheduled rearraignment, which was set on January 21, 2026. Id.  Additionally, the information given to the probation officer is inconsistent with that provided by the defendant for the bond report. *Id*. Once again, blatant, calculated, violations of her release.

[R. 79 at 2-3.]

Although the United States initially sought a hearing on the violations which coincided with the rearraignment on February 19, 2026, the Court scheduled a separate hearing for a later date to afford Ms. Rossi ample time to prepare and respond. [R. 84.]  Upon entering a guilty plea at her rearraignment on February 19, 2026, Ms. Rossi was taken into federal custody. [R. 81.]

On March 26, 2026, a bond revocation hearing was conducted before the undersigned, and arguments were heard on both pending motions. [R. 87.]  The Court heard testimony from J. Thomas Daniel with the U.S. Probation Office, who provided a factual record of both sets of violations. [R. 87; R. 88.]  Ms. Rossi did not introduce any evidence to rebut this testimony, and stipulated to all violations set forth by the Probation Office. [*Id*.]  These motions are now ripe for review.

## II

A criminal defendant who violates the condition of her pretrial supervised release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a).  To determine whether a violation of pretrial supervised release has occurred, courts apply a two-step analysis: (1) first, the court determines whether a violation of a condition of supervised release has taken place; (2) if so, the court must next determine whether revocation of pretrial release is appropriate under the circumstances.  18 U.S.C. § 3148(b).  Even though Ms. Rossi has stipulated to these violations, and no further analysis is essential, the Court will nonetheless apply the § 3148 framework.

4

**A**

The first component of the § 3148 analysis requires a district court to determine whether the defendant has violated one or more conditions of her pretrial supervised release. To do so, the Court must find either (1) there exists "probable cause to believe that the person has committed a Federal, State, or local crime while on release;" or (2) there is "clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3148(b)(1)(A)-(B).

Here, there is clear and convincing evidence that Ms. Rossi violated her supervised release requiring her to remain in home detention, except for the explicitly enumerated travel purposes, unless prior approval was obtained from the U.S. Probation Office. Ms. Rossi's repeated unauthorized travel, on at least a dozen occasions, to a gas station convenience store nearby her home does not fall within any of the categories of travel she was permitted to undertake as part of her conditions of home detention. [R. 77 at 2-3.] Likewise, her trip to Louisville, authorized for the sole purpose of retrieving her brother from the airport, constituted an additional violation of the conditions of her supervised release. [R. 79 at 2-3.] In doing so, Ms. Rossi misled her Probation Officer and instead traveled to Louisville for the purpose of recording an episode of the "Honor Among Thieves" podcast. Uncontroverted evidence of both violations was presented in the form of in-court testimony and the Pretrial Violation Reports dated February 12, 2026, and February 18, 2026, respectively, supplies the requisite evidence of these violations under § 3148(b)(1)(B). *See* [R. 77-1; R. 79-1.] And, as already stated, Ms. Rossi stipulated to these violations at a hearing. In short, the Court is more than satisfied that Ms. Rossi's blatant disregard for the conditions of her home detention constitutes a violation of a condition of her supervised release.

**B**

The second, and final, component of the § 3148 analysis requires that the court determine whether revocation of the pretrial release is appropriate. To reach such a determination, the Court must find either that (1) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," under the factors set forth in 18 U.S.C. § 3142(g); or (2) "the person is unlikely to abide by any condition or combination of conditions of release." The § 3142(g) factors, the same factors considered when a judge determines whether pretrial supervised release is appropriate in the first place, requires consideration of (1) the nature and circumstances of the charged offense(s); (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g)(1)-(4). Only upon such a finding, and after a hearing has been conducted, may a district court revoke the defendant's pretrial supervised release. *United States v. Calvert*, 2025 U.S. Dist. LEXIS 217837, at *3 (N.D. Ohio Nov. 5, 2025) (citing 18 U.S.C. § 3148(b)(1)-(2)).

The unique procedural posture of this motion renders moot the second component of the § 3148 analysis. In the vast majority of cases in which the United States seeks the revocation of pretrial supervised release, the defendant has not yet been adjudged guilty of the charged offenses, or, in some cases, is under supervision pending a future sentencing or report date. Ms. Rossi, however, was taken into federal custody upon entering a guilty plea at her rearraignment on February 19, 2026, given that she was charged with a presumption offense. [R. 81.] This custody would have resulted regardless of whether Ms. Rossi violated the conditions of her release or not. Thus, even if the Court were to have found here that Ms. Rossi did not violate

6

any conditions of her supervised release, and denied the Government's pending motions, she would nonetheless remain in federal custody on that basis. This unique fact moots the second prong of the § 3148 analysis because, unlike in most pretrial violation cases, the Court has already found that the Defendant should be remanded to federal custody.

The central purpose of the United States's continued adjudication of these motions to revoke release is to establish a factual record of these violations, which will then be considered when Ms. Rossi appears before the undersigned for sentencing. Even though Ms. Rossi is already in federal custody, a ruling on these violations at this juncture ensures that these brazen and flagrant violations do not pass entirely without consequence. Consequently, Ms. Rossi will remain in federal custody, having been remanded to custody upon entering a guilty plea, pending sentencing before the undersigned.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

1. the United States's Second Motion **[R. 77]** and Third Motion **[R. 79]** for Revocation of Release are **GRANTED**;

2. Defendant Rossi shall remain in the custody of the U.S. Marshal pending sentencing before the undersigned, presently scheduled for Monday, May 4, 2026.

This the 8th day of April 2026.



Gregory F. Van Tatenhove
United States District Judge